United States Court of Appeals

For the Eighth Circuit

_____

No. 14-3006
_____

Security National Bank of Sioux City, IA, as conservator for JMK, a Minor

*Plaintiff - Appellee*

v.

Jones Day; June K. Ghezzi

*Appellants - Appellants*

v.

Abbott Laboratories

*Defendant*

------------------------------

American Association for Justice; American Board of Trial Advocates; Iowa Association for Justice; Thomas M. Melsheimer; Stephen D. Susman

*Amici Curiae*
_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City
_____

Submitted: April 14, 2015
Filed: August 27, 2015
_____

Appellate Case: 14-3006     Page: 1     Date Filed: 08/27/2015 Entry ID: 4310457

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.
_____

MURPHY, Circuit Judge.

Security National Bank of Sioux City, Iowa, acting as conservator for minor J.M.K., brought this products liability action against Abbott Laboratories, alleging that Abbott's baby formula caused permanent brain damage to J.M.K. After the trial jury found in favor of Abbott, the district court ordered defense counsel June K. Ghezzi to show cause why she should not be sanctioned under Federal Rule of Civil Procedure 30(d)(2) for obstructing each deposition in which she had participated. Defense counsel was subsequently ordered 1) to produce a discovery training video dealing with the impropriety of form objections, witness coaching, and excessive interruptions and 2) to distribute the video to most of the attorneys in her national law firm. Ghezzi and Jones Day appeal. After careful review of the entire record, we reverse.[1]

I.

Security National Bank (the Bank) filed this action on February 15, 2011, alleging that Abbott's baby formula contained a harmful bacteria called enterobacter sakazakii which caused J.M.K. meningitis and permanent brain damage. The Bank sought $16 million in compensatory damages as well as punitive damages. Because the parties could not agree on discovery deadlines, the Bank filed a motion requesting "a scheduling or planning conference with [a] magistrate judge," which was granted, and a scheduling conference was held on April 4, 2011. A scheduling order, discovery plan, and trial management order were entered one week later. After certain amendments to the scheduling order, the magistrate judge set a November 30,

---

[1] Judge Colloton concurs in all but Part II.B of this opinion.

2012 discovery deadline and a March 20, 2013 dispositive motion deadline. Beyond setting those deadlines, granting a joint motion for a protective order, and denying the Bank's motion to extend the amended discovery deadline, the magistrate judge was apparently not involved in any other aspect of the case.

On August 13, 2012 the Bank deposed Dr. Bridget Barrett-Reis, a research scientist in Abbott's nutrition department, and then on August 22 it deposed Sharon Bottock, an assurance manager in one of Abbott's manufacturing facilities. The depositions were taken by the Bank's lead counsel, Stephen Rathke, and defended by Ghezzi, a partner at Jones Day who had never been sanctioned in her 31 year career. During the discovery period no complaint was ever raised about any of the objections by defense counsel, nor did plaintiff's counsel suggest that he needed more time to complete the depositions or was unable to depose the witnesses fairly and fully. Of the seven hours permitted by Federal Rule of Civil Procedure 30(d)(1), the Bottock deposition lasted four hours and ten minutes; the Barrett-Reis deposition took three hours and two minutes. By the close of discovery, neither party had requested judicial intervention from the magistrate judge or the assigned senior district judge regarding any counsel's deposition conduct.

The case was transferred to the trial judge on May 21, 2013, and he subsequently granted Abbott's motion for summary judgment in part while denying its "motion to exclude or limit [the Bank's] proposed expert testimony on medical and scientific causation." The trial judge also criticized defense counsel and her firm for failing "to cite a contrary, but non-controlling decision" and warned that "[h]ide and seek litigation strategy seldom works and did not work here." The judge also commented that defense counsel's "lack of candor" was "not an auspicious beginning for counsel before a judge newly assigned to the case." After a status conference at which the trial judge denied a joint motion for a brief postponement, the court emailed defense counsel, directing them to think "about reasonable [trial] time limits" because in his experience "out of state large firms waste tons [of] time." The court

-3-

emphasized the point by including a picture of a clock at the bottom of the message. Later at an August 16, 2013 pretrial conference, the court commented that "large-firm lawyers" had to be "put on the clock" because the "only thing they know [how to do is] to obstruct things." Defense counsel were also criticized for attempting to present too many trial exhibits "just because [they had] a lot of associates to keep busy" and asked if pretrial stipulations were "some kind of novel concept [since they apparently didn't learn] that at Rambo litigation school."

In preparation for trial, the parties filed their deposition designations, counter designations, and objections. The trial judge overruled all of defense counsel's objections on December 30, 2013, finding them "reprehensible," "frivolous," and "among the most obstructionist [he had] ever seen in over 35 years in the legal profession." A sanctions hearing was to be held during trial to determine whether the court had "the authority to and should order appropriate sanctions against defense counsel for . . . incredible obstructionist conduct." Trial began on January 6, 2014. On the third day of trial the judge ordered defense counsel to show cause why Rule 30(d)(2) sanctions should not be imposed against her "for making numerous objections that lacked a good faith basis in law or fact and which impeded, delayed, or frustrated the fair examination of [each] deposition which [she had] defended."

Plaintiff Bank asked the court to prevent Abbott's manager Sharon Bottock from testifying at trial because of defense counsel's interruptions at her deposition. Defense counsel responded that it was "standard procedure" for both parties to use questions and comments to clarify technical subjects and to help ensure a clear record. She also offered examples of depositions in which she had previously used this procedure. The district judge responded that he had "read some of them" and that "sometimes [she did] an admirable job of asking a better question." Defense counsel explained that "the reason we did it a lot was to move things along," as it was her "job to sort of facilitate that." After reviewing the cited portions of the Bottock deposition, the trial judge stated that he "didn't see anything remotely improper" and that he

-4-

"wasn't really critical of anything in [that] portion" since counsel "did exactly what she said she did yesterday afternoon." She was "trying to assist with the exhibit numbers and all and just trying to move things along." While she "had a form objection in there," he concluded that "it was one of the few that [had] some basis in fact." The district court denied the Bank's request to prohibit Bottock from testifying at trial.

The depositions came up again on the sixth day of trial after plaintiff's counsel asked an expert witness: "Here's page 327 from [the deposition transcript of J.M.K.'s mother]. Isn't she saying that every time she used a bottle she boiled it first?" Defense counsel objected to the question as not "clear from the context of [that page] what it is [the mother was] talking about." The court asked: "And so what is the nature of that objection?" Defense counsel replied that the question was "confusing," and the judge responded, "it may be confusing to you, but [opposing counsel] didn't ask the question to you, he asked it of the witness." When defense counsel added that it "might be confusing to the witness," the judge responded that she had suggested "an answer to the witness which is exactly the problem [he] had with [her] depositions." After the expert witness indicated that he too was confused by the question, the trial judge stated that defense counsel had suggested "an evasive answer for the witness by making [a] speaking objection." The court said it intended to file an "opinion saying that's not a proper objection" and warned that if counsel made another speaking objection, there would "be heck to pay for it."

Three days after the jury found in favor of Abbott, the district court issued an order to show cause on January 21, 2014. The order referred to form objections, witness coaching, and excessive interruptions of depositions; it also required counsel to identify a good faith basis for each of her objections during the Bottock and Barrett-Reis depositions. She was also required to certify that "she personally reviewed the depositions in question and that she did not receive any assistance in preparing her responses." Defense counsel responded to the order as directed,

-5-

offering her basis for each objection raised while defending the depositions. She also submitted a brief questioning the authority of the court to impose Rule 30(d)(2) sanctions on its own motion and arguing that sanctions were inappropriate long after discovery had been completed without any complaint by opposing counsel. Plaintiff's counsel chose not to submit a sanctions brief and did not appear at the July 17, 2014 hearing.

At the end of the hearing, the judge asked defense counsel whether she wanted to recommend a sanction if he decided to impose one. She urged the court to discharge the order to show cause without imposing sanctions. While the judge recognized that a significant "black mark" might be left on her "excellent" career and reputation "depending on what the sanction might be," he did not indicate the type he was considering. At the same hearing the court also described defense counsel as a "very skilled advocate" and an "extraordinary" trial lawyer. Thereafter, on July 28, 2014 the district court entered an order sanctioning defense counsel under Rule 30(d)(2).[2] See Sec. Nat'l Bank of Sioux City v. Abbott Labs., 299 F.R.D. 595 (N.D. Iowa 2014). The court found that she had made 115 "form objections" during the Barrett-Reis and Bottock depositions and that most had not followed an objectionable question. See id. 600–04. Counsel had "quibble[d]" with word choice, raised "hyper-technical truths," and invented "novel objections not grounded" in the law. Id. at 600–01. The sanctions order warned that "[u]nspecified 'form' objections [were] improper and [would] invite sanctions" in the future. Id. at 604. The court also observed that many of the objections had been of a type prompting witnesses to give desired answers.[3]

---

[2] Although the court cited its inherent power to impose sanctions, it did so only in addressing defense counsel's statement that she had "acted in good faith" during the depositions. See Sec. Nat'l Bank of Sioux City, 299 F.R.D. at 599–600.

[3] Examples from the deposition of Sharon Bottock:

Appellate Case: 14-3006    Page: 6    Date Filed: 08/27/2015 Entry ID: 4310457

Seeking to deter counsel and "out-of-state law firms" from "obstructive deposition practices," the judge imposed what it termed an "outside-the-box" sanction. See Sec. Nat'l Bank of Sioux City, 299 F.R.D. at 598, 609–10. The court required defense counsel to "write and produce a training video in which [she], or another partner in [her] firm, appears and explains the holding and rationale of [the district court's] opinion, and provides specific steps lawyers must take to comply with its rationale in future depositions in any federal and state court." Id. at 610. Counsel's video must "address the impropriety of unspecified 'form' objections, witness coaching, and excessive interruptions," and might choose to mention the "few jurisdictions that actually require only unspecified 'form' objections and may suggest that such objections are proper in only those jurisdictions." Id. The video was also to note that it was produced and distributed pursuant to a sanctions order regarding a partner at Jones Day, but it need not name the lawyer, case, or court. Id.

After first obtaining the district court's approval, defense counsel was to notify and provide video access to every attorney at Jones Day "who engages in federal or state litigation or who works in any practice group in which at least two of the lawyers have filed an appearance in any state or federal case in the United States." Sec. Nat'l Bank of Sioux City, 299 F.R.D. at 610. Counsel must also file "an affidavit certifying that [she] complied with [the order] and received no assistance (other than technical help or help from the lawyer appearing in the video) in creating the video's content" and a "copy of the e-mail notifying the appropriate lawyers in [her] firm about the video." Id.

---

Plaintiff's Counsel:  [I]s there something that they . . . just chose not to put—
Defense Counsel:  [S]he didn't write this.  Bottock:  Yes, I didn't write this.

Plaintiff's Counsel:  [D]o you know if that test was performed in . . . Columbus?
Bottock:  I don't.  Defense Counsel:  Yes, you do. Read it.

-7-

Appellate Case: 14-3006   Page: 7   Date Filed: 08/27/2015 Entry ID: 4310457

Ghezzi and Jones Day appeal. The Bank chose not to submit a brief in respect to the sanctions order by the trial court, but five amici submitted briefs in support. The amici are the American Association for Justice, the American Board of Trial Advocates, the Iowa Association for Justice, and two trial lawyers, Thomas M. Melsheimer and Stephen D. Susman.

II.

We review the imposition of Rule 30(d)(2) sanctions for abuse of discretion. Craig v. St. Anthony's Med. Ctr., 384 F. App'x 531, 532 (8th Cir. 2010) (per curiam). This standard "applies to the decision to impose a sanction, the nature of the sanction imposed, and the factual basis for the court's decision." Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1105 (8th Cir. 2004). A court's discretion narrows "as the severity of the sanction or remedy it elects increases," Sentis Group, Inc. v. Shell Oil Co., 559 F.3d 888, 898 (8th Cir. 2009), or when it initiates the subject itself, see Jones v. United Parcel Serv., Inc., 460 F.3d 1004, 1010 (8th Cir. 2006) (Rule 11); see also Lucas v. Duncan, 574 F.3d 772, 775 (D.C. Cir. 2009) (collecting cases). When a sanction is imposed on the court's own motion or is more severe than most, the abuse of discretion standard is applied with "particular strictness." See Norsyn, Inc. v. Desai, 351 F.3d 825, 831 (8th Cir. 2003); see also Lucas, 574 F.3d at 775.

Ghezzi and Jones Day contend that "no deference" is due this sanctions order because the issuing judge had not presided over the discovery period, but this argument does not change our standard of review. Even if the depositions under review were completed before the trial judge became involved in the action, our review is deferential because the district courts are "best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted." MHC Inv. Co. v. Racom Corp., 323 F.3d 620, 624 (8th Cir. 2003) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 404 (1990)). Any other

-8-

Appellate Case: 14-3006   Page: 8   Date Filed: 08/27/2015 Entry ID: 4310457

conclusion could encourage appeals at the "margin." See Automatic Liquid Packaging, Inc. v. Dominik, 909 F.2d 1001, 1004 (7th Cir. 1990); see also In re Southeast Banking Corp., 204 F.3d 1322, 1332 n.11 (11th Cir. 2000). On our review here, the question is whether or not there was an abuse of discretion by the trial court. See, e.g., Lucas, 574 F.3d at 775.

A.

Discovery abuse has been a topic of widespread concern in the legal community. See Shelton v. Am. Motors Corp., 805 F.2d 1323, 1330 (8th Cir. 1986); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007). Preventing such abuse depends in part on reducing the reluctance of attorneys to seek sanctions and of judges to impose them. See Matter of Yagman, 796 F.2d 1165, 1182 (9th Cir. 1986); see also Fed. R. Civ. P. 26, advisory committee notes (1983 amendments). The purpose of sanctions is to "penalize those whose conduct may be deemed to warrant" them and "deter those who might be tempted to such conduct in the absence of such a deterrent." Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976). Sound authority must support a sanction, and the manner in which the sanction is imposed must be consistent with its purpose. See Matter of Yagman, 796 F.2d at 1183–84; see also Federal Judicial Center, Manual for Complex Litigation § 10.155 (4th ed. 2008); cf. Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co., 19 F.3d 431, 439 n.10 (8th Cir. 1994).

The conduct of depositions by oral examination is governed by Federal Rule of Civil Procedure 30. Objections at the time of examination are to be "noted on the record" and "stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). The advisory committee's comments instruct that argumentative objections, suggestive objections, and directions to a deponent not to answer, improperly disrupt, prolong, and frustrate deposition testimony. See Fed. R. Civ. P. 30(d)(2), advisory committee notes (1993 amendments). The comments also

Appellate Case: 14-3006   Page: 9   Date Filed: 08/27/2015 Entry ID: 4310457

state that "an excessive number of unnecessary objections may itself constitute sanctionable conduct." Id. To "deter" such practices, Rule 30(d)(2) authorizes courts to impose "appropriate" sanctions on any "person who impedes, delays, or frustrates the fair examination of the deponent." Craig, 384 F. App'x at 533. Such sanctions are properly imposed to deter ongoing and subsequent discovery abuses. See id.; see also Van Stelton v. Van Stelton, No. C11-4045-MWB, 2013 WL 5574566, at *21 (N.D. Iowa Oct. 9, 2013); cf. Matter of Yagman, 796 F.2d at 1184.

Ghezzi and Jones Day argue that neither the purpose nor the plain language of Rule 30(d)(2) authorized the district court to impose sanctions on the judge's own motion. We do not agree that there is such a limitation on the court's power. We also recognize that opposing attorneys may choose to ignore discovery violations and not pursue sanctions because such "proceedings can be disruptive, costly, and may create personal antagonism inimical to an atmosphere of cooperation." Manual for Complex Litigation § 10.151. Courts may nonetheless impose Rule 30(d)(2) sanctions on their own accord in order to deter ongoing and future misconduct. See Joe E. Estes, Discovery, 29 F.R.D. 191, 297 (1962); cf. William W. Schwarzer, Sanctions Under the New Federal Rule 11—A Closer Look, 104 F.R.D. 181, 197 (1985). The rule's provisions are generally "congruent" with Rule 26(g) which expressly allows courts to impose sanctions "on [their] own" motion. See Fed. R. Civ. P. 30(d)(2), advisory committee notes (1993 amendments); see also Fed. R. Civ. P. 26(g)(3). Both the purpose and the plain language of Rule 30(d)(2) allow courts to consider sanctions sua sponte. See also Chambers v. NASCO, Inc., 501 U.S. 32, 43 n.8 (1991).

B.

In this case, opposing counsel did not raise any objection or seek intervention from the court at any time when defense counsel added to or reinterpreted questions before a deponent could answer or even answered a question herself. Two representative examples of her objections appear in footnote two. See supra

-10-

Appellate Case: 14-3006     Page: 10     Date Filed: 08/27/2015 Entry ID: 4310457

Section I; see also Craig, 384 F. App'x at 533; Deville v. Givaudan Fragrances Corp., 419 F. App'x 201, 203–04, 207 (3d Cir. 2011). On at least one occasion counsel's disagreement with a deponent's answer caused the witness to change her response. Although opposing counsel is not required to object or complain about discovery abuses, cf. Fed. R. Civ. P. 32(d)(3)(B), Federal Rule of Civil Procedure 16 empowers the court to take "early control over the litigation," see Fed. R. Civ. P. 16(b), advisory committee notes (1983 amendments); see also Federal Judicial Center, William W. Schwarzer et al., The Elements of Case Management: A Pocket Guide for Judges (2d ed. 2006).

Rule 16 conferences can provide trial courts with abundant opportunities to establish "early and continuing control" over discovery disputes and discourage "wasteful pretrial activities." See Fed. R. Civ. P. 16(a)(2)–(3). Use of Rule 16 can promote judicial oversight, permitting courts to learn about potential problems and misunderstandings as a case proceeds and to determine whether intervention or sanctions are needed. See Fed. R. Civ. P. 16(c)(2)(F). Here, there was no Rule 16 conference during the discovery phase of this case at which the court could have learned whether there were any problems for it to address. See Montanez v. Simon, 755 F.3d 547, 552 (7th Cir. 2014); C & A Constr. Co. v. DHC Dev., 501 F. App'x 763, 777 (10th Cir. 2012); Newton v. A.C. & S., Inc., 918 F.2d 1121, 1126 (3d Cir. 1990); In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1011, 1012 n.3 (1st Cir. 1988); Elliott v. Perez, 751 F.2d 1472, 1481 (5th Cir. 1985). Nor did either party seek the court's assistance or request sanctions.

Then, sixteen months after defense counsel participated in the Bottock and Barrett-Reis depositions, one year after fact discovery had closed, and nine months after Abbott had moved for summary judgment based on excerpts of key depositions, the trial judge assumed control of the case for the first time and criticized defense counsel's deposition conduct. Seven months later she was sanctioned under Rule 30(d)(2)—some two years after she had defended the Bottock and Barrett-Reis

-11-

Appellate Case: 14-3006     Page: 11     Date Filed: 08/27/2015 Entry ID: 4310457

depositions without complaint from opposing counsel or inquiry by the magistrate judge. Cf. Manual for Complex Litigation § 11.42; Federal Judicial Center, Civil Litigation Management Manual, Ch. 3 (2d ed. 2010).

With few exceptions, sanctions should be imposed "within a time frame that has a nexus to the behavior sought to be deterred." Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 881 (5th Cir. 1988); cf. Cooter & Gell, 496 U.S. at 395–96. Rule 30(d)(2) sanctions assessed near the time of violation deter both ongoing and subsequent abuses. See Craig, 384 F. App'x at 533. Prompt action "helps enhance the credibility of the rule," and by deterring further discovery abuse, "achieve its therapeutic purpose." Cf. Matter of Yagman, 796 F.2d at 1183–84. This is especially true when sanctions are imposed sua sponte after the fact, for delay allows potential violations to pass unchecked and undeterred. E.g., Thomas, 836 F.3d at 881. The primary purpose of Rule 30(d)(2) was not well served by the post hoc procedures here. See Matter of Yagman, 796 F.2d at 1184 (concluding that "the benefit provided by the policy of deterrence is lost if the [district court] postpones imposition of [discovery sanctions] until the end of the case"); see also Craig, 384 F. App'x at 533.

C.

Moreover, no advance notice was given of the unusual nature of the sanction being considered. After the parties filed their deposition designations, counter designations, and objections on December 28, 2013, the court ordered defense counsel to show cause why sanctions under Rule 30(d)(2) should not be imposed. Another order was entered three days after judgment had been entered, requiring defense counsel to identify a good faith basis for every objection she had made during the Bottock and Barrett-Reis depositions. While both orders notified defense counsel of the court's reasons for considering Rule 30(d)(2) sanctions, neither order informed counsel that the trial judge intended to impose such an unusual sanction, requiring her to produce a discovery training video to be distributed to most Jones Day attorneys.

-12-

Appellate Case: 14-3006     Page: 12     Date Filed: 08/27/2015 Entry ID: 4310457

It is well established that before sanctions are imposed under a federal rule or the court's inherent power, the intended recipient is to be given "notice that sanctions against her are being considered and an opportunity to be heard." Plaintiffs' Baycol Steering Comm. v. Bayer Corp., 419 F.3d 794, 802 (8th Cir. 2005). These requirements also apply when district courts impose sanctions on their own motion, see, e.g., Manual for Complex Litigation § 10.155, although additional process may be due depending on the type and severity of the sanction ultimately imposed, see Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1238 (1st Cir. 1991) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980)); see also Manual for Complex Litigation § 10.155 n.50 (collecting cases).

Before imposing the "most severe sanctions," a district court should provide "clear notice" as to the form of the sanction. See Harlan v. Lewis, 982 F.2d 1255, 1262 (8th Cir. 1993); see also Fisher v. Marubeni Cotton Corp., 526 F.2d 1338, 1342–43 (8th Cir. 1975). Particularized notice may be of critical importance when "a lawyer or firm's reputation is at stake" because "sanctions act as a symbolic statement about the quality and integrity of an attorney's work—a statement which may have a tangible effect upon the attorney's career." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 191 (3d Cir. 2002). Any opportunity to be heard would be of little value without notice of the nature of a potential sanction, for only with that information can a party respond in a cogent way. See Simmerman v. Corino, 27 F.3d 58, 64 (3d Cir. 1994). The leading authority on sanctions law has pointed out that notice of the type and severity of the sanction being considered "may lead to substantially different (e.g., more detailed [and] differently directed) responses" by the targeted lawyer. See Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 17(D)(1)(d), at 388 (5th ed. 1998).

The Third Circuit's decision In re Tutu Wells Contamination Litig., 120 F.3d 368 (3d Cir. 1997), is instructive. There, a court's suspension of three attorneys as a

-13-

sanction for discovery abuses was reversed. See id. at 371–72. Although the trial court had notified counsel of its reasons for considering sanctions and the authority on which it would rely, it had not provided proper notice of the nature of the sanction being considered. See id. at 379–80. The Third Circuit concluded that counsel should be notified in advance about the nature of any potential sanction which could leave "an indelible and deleterious imprint on [their] career, reputation, and future opportunities." Id. at 381 n.10. In reversing a trial court in a subsequent case, the circuit court explained that a sanctioned attorney had been entitled to "particularized notice" of the sanction since it would impact his "ability to practice his trade" and damage "his reputation and that of his firm." See In re Prudential, 278 F.3d at 191–93. The trial court had thus abused its discretion by failing to give advanced notice that the sanction under consideration would require "him to attach his scarlet letter to his [pro hac vice] admissions in the District of New Jersey." Id. at 193.

Here, there was no real notice of the nature of the sanction the court had in mind. While the trial judge did provide defense counsel advance notice of his reasons for considering sanctions under Rule 30(d)(2), nothing was mentioned about their unusual nature requiring counsel to produce and distribute an instructional video addressing the impropriety of unspecified form objections, witness coaching, and excessive interruptions. Nor were any "probable consequences" discussed at the subsequent sanctions hearing. See Fisher, 526 F.2d at 1343. The nature of the sanction became apparent only in the court's final published opinion in the matter. See In re Tutu Wells, 120 F.3d at 380; see also In re Prudential, 278 F.3d at 192–93.

Once information about an unusual sanction appears in public, the damage to the subject's career, reputation, and future professional opportunities can be difficult if not impossible to repair. See Adams v. Ford Motor Co., 653 F.3d 299, 308–09 (3d Cir. 2011). Defense counsel's reputation was one of her "most important professional assets," see id. at 305, and the district court's unusual sanction might leave an indelible and deleterious "black mark" on her career, see In re Tutu Wells, 120 F.3d

-14-

Appellate Case: 14-3006     Page: 14     Date Filed: 08/27/2015 Entry ID: 4310457

at 381 n.10.  See also Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346, 1352–53 (Fed. Cir. 2003); United States v. Talao, 222 F.3d 1133, 1138 (9th Cir. 2000).  So unusual a sanction required the district court to give particularized notice of the nature of the sanction it had in mind so that counsel would have a meaningful opportunity to respond.  See In re Tutu Wells, 120 F.3d at 380–81; see also In re Prudential, 278 F.3d at 192–93; cf. Fisher, 526 F.2d at 1343.

We have at times vacated a sanctions order and remanded for further proceedings, see Fisher, 526 F.2d at 1343, but in this case a remand would have little value.  Assuming without deciding that there was sanctionable conduct here, defense counsel has already suffered "inevitable financial and personal costs," see Mackler Prods., Inc. v. Cohen, 225 F.3d 136, 143 (2d Cir. 2000), and any additional sanction proceeding so long after the disputed conduct would not usefully serve the deterrent purpose of Rule 30(d)(2), see Craig, 384 F. App'x at 533; Matter of Yagman, 796 F.2d at 1183–84.  See also Nat'l Hockey League, 427 U.S. at 643.

For these reasons, and in the exercise of our supervisory power over judicial proceedings in the district courts, we reverse the July 28, 2014 order of the district court sanctioning June K. Ghezzi.

_____